ROBERTS, Chief Justice.
This is an appeal from a final decree entered in a suit for a declaratory decree filed in the court below by the appellees, as and constituting the Board of County Commissioners of Dade County, Florida, against the appellant, the Florida State Turnpike Authority. The purpose of the suit was to obtain a judicial construction of a portion of Section 2 of the Florida Turnpike Act, being Chapter 28128, Laws of Florida, Acts of 1953. Section 2 of the Act sets forth the purpose thereof in the following language:
“The purpose of this act is to facilitate vehicular traffic, diminish the present handicaps and hazards and promote safety on the conjested highways in Florida, and make possible the construction of modern express highways, and to carry out said purpose the Florida state turnpike authority (hereinafter created) is hereby authorized and empowered to construct, maintain, repair and operate turnpike projects (as hereinafter defined) at the location herein established, and at such other locations as may be hereafter established by law, and to issue turnpike revenue bonds of said authority, payable solely from revenues, to pay the cost of such projects. It is the further purpose of this act to prohibit the construction, maintenance, repair or operation of any toll turnpike project by any subdivision of the government of the State of Florida, subsequent to the enactment of this lavs, except upon specific authorisation by the Legislature of the State of Florida."
We aré here called upon to interpret the italicized portion of Section 2 of the Act quoted above, the necessity for which arose out of the following facts and circumstances.
Under the authority of Chapter 22963, Laws of Florida, Acts of 1945, as amended, the appellees, acting in their capacity as the Dade County Port Authority (“Port Authority” hereafter), acquired in 1951 certain bridges, roads and other property constituting the Venetian Causeway, which extends across Biscayne Bay from a point in Miami Beach to a point in the City of Miami, all in Dade County, Florida. This purchase was financed by the issuance of revenue bonds payable from the revenues derived from the operation of the Causeway as a toll road, and the Port Authority has continuously since that date operated the same as a toll road.
It also appears that the purchase of the Causeway was merely a part of a general plan to develop an expressway from the *212 Miami International Airport — also owned by Dade County and operated by the Port Authority as a County project — to Miami Beach, Florida, and that the Port Authority is now engaged in working out a general financing program, including the refunding of the Causeway revenue bonds, looking toward the completion of this planned development -by constructing the remainder of the expressway from the present terminus of the Causeway in Miami to the Miami International Airport. It is contemplated that the expressway, including the Causeway, would thereafter be operated as a toll road for its entire length.
Difficulties have, however, been encountered in this refinancing program due to the language of Section 2, above quoted and italicized. Thus, the instant suit by the Port Authority to obtain a declaration of the effect of this portion of the Act on their authority to carry out the proposed toll project. The lower court held that the quoted provisions of the Act constituted no inhibition to the Port Authority’s construction of the continuation of the Causeway and its operation as a toll road and, we think, rightly so.
When the Act, Ch. 28128, supra, is construed in its entirety — as we are required to do — it is clear that it contemplates the construction and operation of, and the reservation of authority to the Turnpike Authority over, only one particular expressway in this state — the “Sunshine State Parkway”, Section 3 of the Act. The Act defines, also in Section 3 of the Act, the general limits of the Sunshine State Parkway as “a route extending from a point in Dade County, Florida, in a general northerly direction to a point in Duval County, Florida”, but authorizes the construction of only the southernmost portion of the Parkway, to wit, “beginning at a point in Dade County, Florida, and adhering to the aforesaid route, thence in a general northerly direction for a distance not exceeding one hundred and ten miles from the point of beginning; * * “General northerly direction” is defined as “either an east coast or central Florida route”. The Turnpike Authority, by subsection (6) of section 6 of the Act, is authorized to “determine the exact route and exact termini of turnpike projects”.
Since, then, it is clearly the purpose, of the Act to set up a plan for the construction and operation of only one particular expressway, ultimately to extend the length of Florida from Duval County to Dade County, there can be no doubt that the Legislature intended, by the language here under discussion, only to insure that the various subdivisions of this state would not be able to build, within their own territorial jurisdictions, “toll turnpike projects” which might operate in competition with and in jeopardy of the financial structure of the Sunshine State Parkway. Nor can this court blind itself to the possibility that, without such limitation, it might have been possible, after the construction of the first 110-mile segment of the Parkway by the Turnpike Authority, for the several counties northward to supplement the Parkway by a series of county-sponsored units in such a manner as to complete the Parkway into Duval County, Florida, and thus “bypass” the Turnpike Authority in the determination of the “exact route and exact termini” of the Parkway and in its construction, operation, and maintenance by the Turnpike Authority as one complete toll turnpike project, contrary to the clear legislative intent. We think that it was only to prevent such results that the language of the Act here under discussion was used by the Legislature.
Certainly, a project such as the one here contemplated by the Port Authority, designed to meet an entirely local traffic problem, offering no competition to the proposed Parkway, and bearing no reasonable relationship thereto, does not infringe upon the Turnpike Authority’s dominion over the proposed Parkway nor usurp any of its powers and duties with respect thereto, as set forth in the Act. It is our view, then, that the Legislature did not intend to prohibit such a project.
*213 For the reasons stated, the decree of the lower court should be and it is hereby
Affirmed.
TERRELL, THOMAS, SEBRING, MATHEWS and DREW, JJ-, concur.
HOBSON, J., not participating.